**Freddie Hubert DREYER, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 4462.**

Supreme Court of Wyoming.

Oct. 1, 1975.

Jack R. Gage, Hanes, Carmichael, Gage & Speight, P. C., Cheyenne, for appellant.

V. Frank Mendicino, Atty. Gen., Samuel A. Soulé, Asst. Atty. Gen., and Ted O. Simola, Asst. County Atty., Cheyenne, for appellee.

Before GUTHRIE, C. J., McCLINTOCK, THOMAS, and ROSE, JJ., and ARMSTRONG, D. J., Retired.

ARMSTRONG, D. J., Retired.

Dreyer was indicted by grand jury on January 4, 1974, arrested the same day, and charged with armed robbery at the Hitching Post Motel in Cheyenne, Wyoming on November 19, 1973. He was released on bail. He was arraigned in district court on February 8, 1974, pled not guilty and the trial date was fixed for March 18, 1974. Trial setting was continued by stipulation of counsel and set again for July 1, 1974. A jury verdict of guilty. was returned July 2, 1974, and defendant was sentenced. Notice of appeal to the Supreme Court was filed by the defendant the next day. Defendant was released pending appeal upon filing $10,000 bond.

However, on June 24, 1974, defendant filed Motion for Continuance of Trial Date, supported by affidavit of his counsel asserting that defendant's adoptive mother, Mrs. Mildred Dreyer, of Kissimmee, Florida, was under the care of a physician who advised her against traveling to Wyoming until the Fall of the year. Counsel advised Mrs. Dreyer to obtain and send a written statement from the doctor to that effect. On June 24, Mrs. Dreyer called counsel and told him the doctor was on vacation and could not be reached until July 1, 1974. She further advised counsel that she was

scheduled for surgery in Kansas City during October, but that she believed her physical condition would permit one trip from Florida to this area, but that two would be detrimental to her health in view of her advanced age and condition; that her belief was based in part upon statements made to her by her doctor.

The affidavit further asserts that Mrs. Dreyer is a material and indispensable witness in the case; that she sent money to the defendant for his support during the time when the robbery occurred; that her check for $100.00 was in the mail to defendant, "during the period of time in question"; that her testimony would be important evidence "to prove that there was no reason or motive for the defendant, Freddie Hubert Dreyer, to commit the crime charged"; that she would testify about the defendant's previous life and offenses and his "state of mind and social attitudes" after his release from prison on October 13, 1972; and that the motion was not interposed for the purpose of delay of trial.

There was nothing in the affidavit indicating the nature of Mrs. Dreyer's ailment.

On June 28, 1974, a typewritten statement was filed in the case. It was dated June 25, 1974, written on a prescription blank with a doctor's name and Florida address printed thereon, addressed to whom it may concern, and reads:

> "Mrs. Mildred Dreyer is under my care for ASHD with mitral insufficiency, aortic stenosis, and also coronary artery disease with angina. In my opinion, she would not be able to attend a subpoena for court duty because of the above mentioned condition."

The doctor's writing was not under oath and no record was made that the signature was the doctor's,[1] nor that its contents were the words and opinion of the doctor, nor what the disease was in layman's language, nor why she could not travel.

On the day set for trial, July 1st, in chambers, the trial court told counsel that he had informed Defendant's counsel on the day the Motion for Continuance was filed (June 24th) "that it was being overruled." The court stated that it felt the motion was so late as not to permit a continuance; that Mrs. Dreyer could have been deposed at an earlier date,[2] or the motion made earlier; and that perhaps a stipulation as to her unavailability and the alleged admissible facts[3] to which she would testify could have been obtained from the prosecuting attorney if defendant's counsel had consulted him.[4]

Counsel then assured the court that the information from Mrs. Dreyer had been

---

1. *Hinton v. Saul*, 37 Wyo. 78, 259 P. 185, 187.

2. Upon argument on appeal defendant alleges he did not have sufficient money to take a deposition.

3. *In re Estate of Carey*, Wyo., 504 P.2d 793, 798.

4. § 1–68, W.S.1957, "A motion to postpone the trial of a case, in any of the courts of this state, on account of the absence of evidence, can be made only upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be; and, if it is for an absent witness, the affidavit must show where the witness resides, if his residence is known to affiant, and the probabilities of procuring his testimony within a reasonable time, and that his absence has not been procured by the act or connivance of the party, nor by others at his request, nor with his knowledge or consent, and what facts he believes the witness will prove, and that he believes them to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured. *If, thereupon, the adverse party will consent that, on the trial, the facts stated in the affidavit shall be taken as true, if the absent evidence is written or documentary, and in case of a witness that he will testify to the facts stated in the affidavit as true, the trial shall not be postponed for that cause*; and, in such case, the party against whom such evidence is used shall have the right to impeach the evidence of such absent witness, as in case where the witness is present, or his deposition is used." (Emphasis added)

received by him only two or three days prior to June 24, and that she "led us to believe that the condition had recently arisen and she had not known of it previously," to which the court said that the record does not disclose the date of the onset of her physical disability, but from the doctor's certificate of her type of problem it would not appear to be one of immediate onset, and that the order setting trial date was entered March 12, 1974.

On appeal defendant urges the court to reverse his conviction on two grounds. First, the trial court's denial of a motion for continuance because of the unavailability of Mrs. Dreyer as a witness in court. Second, the discrepancies in the testimony of eyewitnesses in identifying defendant as the person who committed the armed robbery.

■ With respect to the identifying testimony, none of the four eyewitnesses were able to select the defendant, or anybody else, the first time they examined a series of photographs. There was no question raised concerning the procedure used by the officers when pictures were shown to the witnesses. The day after the robbery two of the identifying witnesses assisted an artist in drawing a composite picture of defendant which was introduced in evidence and examined by the jury, together with some photographs of defendant. The other witnesses selected defendant's photo after they saw the composite. All witnesses examined photographs while separated from the other witnesses. Some of the witnesses testified they saw defendant in the motel office twice for a short time on the evening of the robbery. All of the eyewitnesses made an in-court identification of the defendant from their first recollection of him. All the witnesses were competently examined and cross-examined on their identification of defendant. There were some differences of opinion among them on the color of defendant's eyes, and his height and weight.

Defendant testified he was 5' 11½" tall and 35 years old. The eyewitnesses testified he was 5' 8" to 5' 10". Their estimates of age were from the twenties to thirties or possibly older. His eyes are apparently blue. The witnesses described them as dark, dark hue, dark intense eyes.

The appellant's contention in this case with respect to disparities in the testimony of physical appearance of the defendant is answered in *Boyd v. State,* Wyo., 528 P.2d 287, 291 (1974) as follows:

"In the overall contention that there was insufficient legally competent evidence to convict the defendant of the charges against her, emphasis is placed upon the fact that there was a disparity in the evidence regarding her height and weight. An investigator, Ramirez, placed her at 5 feet 6 inches, 105 pounds, whereas she was actually much taller and heavier. These variations, which raise the question of her identity and go to the credibility and weight of Ramirez's testimony, were matters solely within the province of the triers of fact, as was the color of her hair."

A leading United States Supreme Court case on identification by photographs is *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. At p. 384 the Court enunciated a standard to be used by trial courts in resolving questions of such identification testimony in these words:

" * * * we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aisde on that ground only if the photographic identification procedure was so impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

In the same case Justice Black said that the circumstances under which the witnesses identified pictures of defendant goes to the weight of the testimony and therefore

is a jury question and not a due process issue.

In the case at bar appellant does not object to the methods used by the officers in displaying the pictures. In fact, only six pictures were shown to the witnesses in *Simmons*. At least a dozen different photos were displayed in this case. The contention of appellant concerning disparities of physical features of the defendant is without merit.

■ This court cannot say that an injustice resulted from denial of the continuance. The case was fairly tried without Mrs. Dreyer's testimony. There was no offer of proof submitted to the trial court concerning what she would have testified, if present, but from the affidavit supporting the motion for continuance it is obvious that the admissible facts asserted therein were adequately presented by the testimony of other witnesses.

*Sims v. State,* Wyo., 530 P.2d 1176, 1181 (1975) states:

"In Wyoming it is likewise the well-known rule that the granting or refusal of a request for continuance of a trial of a case is ordinarily a matter within the sound discretion of the trial court under the circumstances of each case. The point has been before the Wyoming Supreme Court. *Glover v. Berger,* 1953, 72 Wyo. 221, 263 P.2d 498; *Lampitt v. State,* 1925, 34 Wyo. 247, 242 P. 812, and the cases therein cited. In the light of this popular and universal rule, we can find no reason to see that the trial judge abused his discretion in denying a continuance under the circumstances here disclosed. The defendant failed to make an adequate offer of proof to justify a continuance and had every benefit of due process."

There was no prejudicial error.

Affirmed.