Richard Lee SMITH, Jr., Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 96–311.

Supreme Court of Wyoming.

May 29, 1998.

Rehearing Denied June 24, 1998.

Sylvia L. Hackl, State Public Defender; Donna Domonkos, Appellate Counsel; and Jason M. Tangeman, Assistant Appellate Counsel, for Appellant(Defendant).

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker–Musick, Assistant Attorney General, for Appellee(Plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Richard Smith, Jr. appeals from his conviction for delivering a controlled substance.

We affirm.

## ISSUES

Smith presents the following issues for our review:

*ISSUE I*

Whether the trial court erred, as a matter of law, in making ex parte communication with the jury during [its] deliberations?

*ISSUE II*

Whether the trial court's ex-parte communication with the jury denied the appellant's right to a fair and impartial jury pursuant to the Fourteenth Amendment of the United States Constitution and Art. 1, § 10 of the Wyoming Constitution?

*ISSUE III*

Whether the trial court erred, as a matter of law, in denying the appellant's motion for a dismissal?

*ISSUE IV*

Whether the appellant's right to counsel under the Sixth Amendment of the United States Constitution and Art. 1, § 10 of the Wyoming Constitution was violated as it was ineffective?

## FACTS

On February 28, 1996, a social worker for the Department of Family Services informed the Division of Criminal Investigation that Smith and his girlfriend were smoking marihuana in front of their five-year old daughter. As part of his investigation, a DCI agent interviewed a minor female (the houseguest) who had lived with Smith and his girlfriend during the last half of February of 1996. The houseguest informed him that Smith and his girlfriend had provided her with marihuana while she was living with them. The agent obtained a warrant to search Smith's residence. During that search, the agent discovered a small amount of marihuana and drug paraphernalia. Smith was subsequently arrested for unlawfully delivering a controlled substance under WYO. STAT. § 35–7–1031(a)(ii) (1997).

At the trial, the houseguest testified that she had lived at Smith's home for a two-week period in February of 1996. The houseguest, who was only seventeen years old and still in high school, had been kicked out of her father's home because she was using drugs again. The houseguest explained that, while she was living at Smith's home, Smith retrieved marihuana from different places in the apartment and shared it with her and his girlfriend. The houseguest estimated that she smoked marihuana two to three times a day during that two-week period.

At the close of the prosecution's case, Smith moved for a dismissal, arguing that the prosecution did not satisfy the delivery element of the charged crime. He reasoned that the houseguest was in constructive possession of the marihuana because she was living in his home and that, therefore, a "delivery" under § 35–7–1031(a)(ii) could not have occurred. The trial court denied Smith's motion and sent the case to the jury.

Approximately two hours after the jury began deliberating on the case, it notified the trial court that it was having difficulty reaching a unanimous verdict. Without contacting either counsel, the trial court reinstructed the jury regarding its obligation to reach a unanimous verdict. The jury deliberated almost four more hours and eventually found that Smith was guilty on one count of delivering a Schedule I controlled substance.

Smith moved for a new trial, arguing that the trial court should not have communicated *ex parte* with the jury. The trial court denied Smith's motion and sentenced him to serve a term in the Wyoming State Penitentiary of not less than three years nor more than five years. Smith appeals to this Court.

## DISCUSSION

### A. Instruction to Jury

Smith asserts that the trial court committed reversible error when it communicated with the jury without first summoning him or his counsel. He also contends that the trial court abused its discretion by denying his

motion for a new trial, arguing that he was denied his right to be present at the critical stages of his trial and that the coercive nature of the instruction violated his right to have a fair and impartial trial.

■ "A decision to grant or deny a new trial is within the sound discretion of the district court and we will not disturb a ruling absent an abuse of that discretion." *Black v. State*, 869 P.2d 1137, 1141 (Wyo.1994). An instruction which is given when it appears that the jury may be deadlocked must not coercively impact the jury. *Hoskins v. State*, 552 P.2d 342, 347 (Wyo.1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). "Communications from a judge to a jury are coercive when they possess the substantial propensity of prying minority jurors loose from beliefs they honestly have, constitute an undue intrusion into the jury's province and dilute the requirement of unanimity." *Smith v. State*, 564 P.2d 1194, 1201 (Wyo.1977).

After deliberating for approximately two hours, the jury reported that it was deadlocked. The trial court, therefore, gave the following instruction outside the presence of Smith and his counsel:

> Ladies and gentlemen, the Bailiff reports you are having some difficulty reaching an agreement. If you fail or are unable to agree, of course there will of necessity be another trial to a jury of 12 men and women who are no more intelligent, impartial or competent than yourselves, who would have the same responsibility, under the same oath, who would hear the evidence with the same attention and with an equal desire to arrive at the truth.

> The Court should not supplement the instructions already given to you. You should not make any editorial or explanatory remarks on the verdict form.

> You have deliberated less than two hours. The Court requests you to deliberate further in an atmosphere of mutual deference and respect, giving due consideration to the views of your fellow jurors in the knowledge that your verdict must reflect the views of all. Your attention is specifically called to all of the other in-

structions given to you in this case. This instruction is to be considered with all the other instructions in this case.

The jury deliberated approximately four more hours after receiving the instruction and returned with a unanimous guilty verdict on the delivery-of-a-controlled-substance charge.

■ It has long been settled that an accused enjoys a right to be present at all stages of his trial. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970). It is also well settled that, under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, a defendant must be allowed to be present at his trial to the extent that his absence would frustrate a fair and just hearing. *Seeley v. State*, 959 P.2d 170, 177 (Wyo. 1998); *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987). Wyoming has embodied these constitutional protections within WYO. STAT. § 7–11–202 (1997) and W.R.Cr.P. 43(a).

This Court recently had the opportunity to determine whether a trial court erred by giving an *Allen* instruction to a deliberating jury outside the presence of the defendant and his counsel. *Seeley*, 959 P.2d at 176–79. In *Seeley*, the trial court gave substantively the same instruction as was given in the case at bar to a deadlocked jury without first summoning Seeley and his counsel. We held that the trial court erred by instructing the jury outside the presence of Seeley and his counsel. 959 P.2d at 178. We considered the error to be harmless beyond a reasonable doubt, however, because the instruction was not coercive. 959 P.2d at 178–79.

The trial court in this case also erred by violating Smith's constitutional right to be present at every stage of his trial. The error, however, is subject to a harmless error analysis. *Id.* In determining if an error is reversible, we analyze whether "the defendant's absence created any reasonable possibility of prejudice." 959 P.2d at 178. We hold that Smith was not prejudiced by his absence during the giving of the *Allen* instruction because the instruction was neither coercive nor prejudicial. The statements

contained within the instruction did not pry jurors from their honestly held beliefs, intrude into the jury's decisonal province, create a rush to judgment, or dilute the requirement of unanimity. The trial court did no more than send the jury back to reconsider the evidence in the case. Although the trial court erred by instructing the jury without first beckoning Smith and his counsel, the error was harmless beyond a reasonable doubt.

## B. Motion to Dismiss

■ Smith contends that the trial court should have granted his motion for a dismissal, arguing that he could not have delivered marihuana to the houseguest because she resided in his home and was, therefore, in constructive possession of the marihuana. Smith focuses the bulk of his argument on attempting to demonstrate that the evidence supported his contention that the houseguest exercised sufficient dominion and control over the marihuana to put her in constructive possession of it and that it was, therefore, impossible for him to have delivered it to her.

At the close of the prosecution's evidence, Smith moved for a dismissal of the charges against him by arguing the constructive possession theory. The prosecution argued that the houseguest testified that Smith had provided her with the marihuana and that, even though she knew where Smith kept the marihuana, she never smoked it without it being offered to her. The trial court determined that the prosecution presented a prima facie case that Smith had delivered the marihuana to the houseguest and that the issue of whether a delivery occurred was a question of fact for the jury to decide. Although the trial court denied Smith's motion to dismiss, it agreed to give the jury a lesser-included offense instruction for possession and to include a possession offense on the verdict form as a lesser-included offense.

During the jury instructions phase of the proceedings, the trial court defined the delivery offense and also instructed the jury that, if it could not find Smith guilty of delivery beyond a reasonable doubt, it should consider the possession offense. The trial court also defined the elements of the possession of-fense. The trial court then went over the verdict form with the jury and explained to the jury that it could consider the two charges.

■ Although Smith moved for a dismissal at the close of the prosecution's evidence, arguing that the evidence was not sufficient to support a conviction, we presume that technically Smith's motion was intended to be, and was treated as, a motion for a judgment of acquittal. *See* W.R.Cr.P. 29(a). We, accordingly, will follow our well known standard for reviewing rulings on motions for judgments of acquittal: "[W]e accept as true the evidence of the prosecution, together with all logical and reasonable inferences to be drawn therefrom, leaving out entirely the evidence of the defendant in conflict." *Apodaca v. State*, 796 P.2d 806, 807 (Wyo.1990).

A motion for judgment of acquittal is to be granted only when the evidence is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime. Or, stated another way, if there is substantial evidence to sustain a conviction of the crime, the motion should not be granted. This standard applies whether the supporting evidence is direct or circumstantial.

*Leppek v. State*, 636 P.2d 1117, 1119 (Wyo. 1981) (citations omitted). *See also Harris v. State*, 933 P.2d 1114, 1124 (Wyo.1997).

■ We use the following standard of review to determine whether sufficient evidence supported the trial court's factual findings:

[O]n appeal, the Supreme Court assumes that evidence in favor of the successful party is true, leaves out of consideration entirely the conflicting evidence presented by the unsuccessful party, and gives the evidence of the successful party every favorable inference that may reasonably and fairly be drawn from it. Furthermore, a reviewing court cannot substitute its judgment of the facts for that of the trial court unless the trial court's judgment is clearly erroneous or contrary to the great weight of the evidence.

*Wyoming Sawmills, Inc. v. Morris,* 756 P.2d 774, 775 (Wyo.1988). *See also Fowler v. Fowler,* 933 P.2d 502, 504 (Wyo.1997). This Court has decided that showing a person was in "[c]onstructive possession of the controlled substance is sufficient" to convict that person of possessing an illicit drug. *Urrutia v. State,* 924 P.2d 965, 967 (Wyo.1996). *See also Wise v. State,* 654 P.2d 116, 119 (Wyo. 1982). We have not, however, decided whether it is impossible, as Smith asserts, to deliver a controlled substance to someone who is already in constructive possession of it. A determination on that issue will be left for a future case because, as we discuss below, we hold that the houseguest was not in constructive possession of the marihuana.

 The prosecution may prove that a person was in constructive possession by showing that he had dominion and control over the substance. *Urrutia,* 924 P.2d at 967; *Saldana v. State,* 846 P.2d 604, 620 (Wyo.1993). Dominion and control over a substance occur when the person who has been charged with having constructive possession has sufficient control over the party who has actual possession to obtain the illicit goods upon command. *Saldana,* 846 P.2d at 620.

The houseguest testified that, during the two-week period that she lived with Smith, she smoked marihuana only when Smith provided it to her or when, on some occasions, another person provided it. She never testified, however, that she had the ability to smoke the marihuana whenever she wanted to or that she had sufficient control over Smith to demand that he give her some marihuana. Furthermore, Smith admitted that he gave the houseguest marihuana on at least two occasions.

We hold that the houseguest did not have dominion and control, and thus constructive possession, over the marihuana and that sufficient evidence existed from which reasonable persons could have found Smith guilty of delivery beyond a reasonable doubt. The trial court, therefore, properly denied his motion for a judgment of acquittal.

## C. Effectiveness of Counsel

 Smith claims that he was denied his constitutional right to have effective assistance of counsel at his trial. He maintains that his counsel failed to cross-examine the houseguest with regard to alleged inconsistencies between the testimony that she gave at the trial and the declarations in the affidavit which supported the information.

 In order to prevail on his claim of ineffective assistance of counsel, Smith must make the dual showings that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Martinez v. State,* 943 P.2d 1178, 1184 (Wyo. 1997). We have reviewed the relevant portions of the record and conclude that no material inconsistencies exist. Minor differences between the affidavit and the houseguest's testimony are to be expected. The houseguest personally testified at the trial, but she did not personally write the affidavit. Rather, the DCI agent who interviewed her provided details to the deputy prosecuting attorney, and the attorney in turn wrote the affidavit.

Additionally, Smith's counsel used sound trial strategy in deciding not to cross-examine the houseguest on these alleged inconsistencies because giving her the chance to clear up the questionable points would have prevented him from highlighting the believed inconsistencies during closing arguments. Furthermore, attempting to point out inconsistencies through cross-examination could have easily elicited a wealth of unfavorable testimony against Smith. We are, therefore, convinced that Smith's counsel acted reasonably when he decided not to cross-examine the houseguest with regard to perceived inconsistencies between her trial testimony and the affidavit.

## CONCLUSION

Any error that the trial court committed by communicating with the deadlocked jury outside the presence of Smith and his counsel was harmless, sufficient evidence supported

the jury's verdict, and Smith received effective assistance of counsel.

Affirmed.